Breitel, J. (dissenting).
Police officers, holding a warrant to search the apartment residence of defendant in Bronx County, entered the apartment and made a search pursuant to the warrant while, among others, defendant, his wife, and defendant’s brother-in-law (Anatola) weire present. The only significant issue upon which there is disagreement in the court is whether the interrogation of defendant was proper under the circumstances without the officers first having given defendant the fourfold warning mandated by the Supreme Court in Miranda v. Arizona (384 IT. S. 436). The suppression hearing was conducted subsequent to the decision in the Miranda case and its . rules are, therefore, applicable (Johnson v. New Jersey, 384 U. S. 719, 732-733).
Just before the police entered the apartment the brother-in-law, Anatola, was leaving. He was seen to drop a brown paper bag. Upon opening the bag, .the police officer who retrieved it found it to contain what he had reason to believe were nar *11 cotics. Anatola was arrested. A boy, defendant's son, then emerged from the apartment. He re-entered the apartment and was later permitted to go his way to school in response to the importuning of defendant’s wife.
After these preliminary events, the officers conducted a thorough search of the apartment. In the bedroom tacked to the underside of a raised free-standing “ closet ” the police found a piece of cloth containing three glassine envelopes, a clear plastic, and a manila envelope, each enclosing a white powder. Just before the removal of the cloth the officer asked defendant “ What’s under there?” Defendant “ said it’s nothing, he didn’t know anything under there.” The officer further testified: “ Well, when I took them from under — when I first asked the defendant Mir. Cerrato ‘ What’s under there? ’ And he said ‘ I don’t know. Nothing.’ And I took them from under and looked at .them, and he was standing with me. I said, ‘ Does your wife know anything about this? ’ He said, 1 No, it’s all mine.’ And that [sic] he proceeded to tell me what was in each bag.” The officer later detailed that defendant told him “ the brown envelope contained cocaine, one was just a white powder and the other bags contained heroin.” Defendant was then arrested.
On the suppression hearing the Trial Justice, in substantial effect, found the events to have occurred as above described, crediting the police officer’s testimony. The facts thus found are conclusive on this court (cf. People v. Leonti, 18 N Y 2d 384, 389-390). But, accepting the facts as thus found, the admission so obtained should have been suppressed and excluded from the trial upon which defendant was convicted of possession of narcotics as a misdemeanor and sentenced to the New York City Penitentiary.
The situation which arose in this case was expressly distinguished and not passed upon in People v. Torres (21 N Y 2d 49). In the Torres case, during a search of defendant’s apartment under a search warrant, without any interrogation whatever, defendant volunteered where the contraband was to be found, and it was '(supra, p. 51). In this case, defendant was subjected to a series of questions, however short, before all the incriminating admissions were obtained. He was asked what was under the “ closet.” "When the contraband was found, he *12 was asked in effect whose it was, with the ingenious but disingenuous suggestion that it was the property of defendant’s wife. In response to the court’s leading question, the officer testified that the defendant volunteered, without further questioning, a description of the contents of the several containers.
Moreover, the questioning was preceded not only by the stopping -of the brother-in-law, but by his arrest. The son was permitted to leave after the mother’s request. It was said in the Torres case (supra, p. 54), that the mere fact of a search warrant and its execution, even if accepted as creating a custodial atmosphere, does not necessarily suggest a “ compelling influence ” to speak; the allowance of the testimonial evidence was bottomed-on the voluntary spontaneous statements by the defendant. In this case, the police had already made it clear that no one was to leave the apartment without their permission. Narcotics had already been found on one occupant, the warrant was directed to defendant, and it takes a super-attenuated analysis to conclude that defendant had a reasonable basis for believing that he was a free man, when he was interrogated.
Under such circumstances, the Miranda rules apply (see Miranda v. Arizona, supra, pp. 467, 472-473, 477). Nor are the rules avoided by a waiver obtained by .threat, trick, or cajolery (id., p. 476). Hence, the designedly oblique question suggesting inculpation of the wife does not sustain admissibility. Indeed, it may be the fact that most cogently negates the voluntariness of the admissions.
Accordingly, I dissent and vote to reverse the judgment of conviction, and remand the action for a new trial.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Keating concur with Judge Jasen ; Judge Breitel dissents and votes to reverse in a separate opinion.
Judgment affirmed.